424 So.2d 122 (1982)
Robert MAY, Appellant,
v.
FLORIDA PAROLE AND PROBATION COMMISSION, Appellee.
No. AJ-470.
District Court of Appeal of Florida, First District.
December 22, 1982.
*123 Robert May, in pro. per., for appellant.
Malcolm S. Greenfield, Gen. Counsel, Tallahassee, for appellee.
McCORD, Judge.
This appeal is from an order of the Florida Parole and Probation Commission (the Commission). We affirm.
Appellant May is serving sentences in the state prison for several felony convictions. On December 3, 1980, his presumptive parole release date (PPRD) was initially set for July 31, 1984, under the then-existing (1979) matrix guidelines established by rule of the Commission for determining such tentative release date. On May 30, 1981, while still in prison, appellant was convicted of the crime of introduction of contraband into a correctional institution and was sentenced to one year in prison to run consecutively with his previous sentences. Based on this conviction, the Commission reinterviewed appellant, aggregated his present and previous convictions and recalculated his PPRD based on new matrix time ranges adopted by the Commission on September 10, 1981 (Rule 23-21.09, Florida Administrative Code).
Appellant contends first that the Commission's recalculation of his initial PPRD based on the 1981 guidelines violates an order issued by the Circuit Court of the Second Judicial Circuit directing the Commission to establish a new PPRD in light of appellant's latest conviction based on the 1979 matrix guidelines. This contention is without merit. The order referred to by appellant was in response to a petition for writ of mandamus which had been filed in the circuit court by appellant to compel the Commission to determine his PPRD. Before the court ruled, the Commission established appellant's PPRD, and thereafter, the court, apparently unaware of the Commission's action, granted the writ and ordered the Commission to establish his PPRD within 30 days of the order. The order is devoid of any suggestion that the establishment of appellant's PPRD was necessitated by his latest conviction or that his PPRD was to be based on the 1979 guidelines. The only logical inference to be drawn is that the order was issued because the Commission had failed to timely establish appellant's PPRD and because the court was unaware at the time of issuance of its order that the Commission had previously set appellant's PPRD. Thus, by the time the order issued, it was moot. Consequently, there is no basis for concluding that the Commission violated the court's order by failing to conduct a hearing to establish appellant's PPRD within 30 days of the order.
Appellant next contends that the Commission's setting of his new PPRD, based on the 1981 matrix guidelines, violated state and federal constitutional proscriptions against ex post facto laws in that the new PPRD was set pursuant to the rule in effect at that time rather than the rule in effect when he committed the crimes. We have *124 previously ruled adversely to this contention in several cases. See Overfield v. Florida Parole and Probation Commission, 418 So.2d 321 (Fla. 1st DCA 1982); Britt v. Florida Parole and Probation Commission, 417 So.2d 1079 (Fla. 1st DCA 1982); Hurst v. Florida Parole and Probation Commission, 418 So.2d 444 (Fla. 1st DCA 1982); and Lopez v. Florida Parole and Probation Commission, 410 So.2d 1354 (Fla. 1st DCA 1982). As we stated in Overfield:
Without extended discussion of whether amendments to the matrix rule constitute procedural changes not subject to ex post facto considerations, or are substantive changes, we cannot agree that such amendments necessarily increase punishment and are, therefore, illegal. The matrix time range does not automatically determine time served, and the Commission in its discretion may aggravate or mitigate the matrix time, setting a release date above or below the matrix, so long as it states its reasons with particularity. [Citations ommitted.] This process is to be contrasted with that addressed in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), where statutory changes in gain-time credits automatically reduced, without discretionary decision-making, the time to be served.
In addition to the rationale stated in the opinions in the foregoing cases, we add that a presumptive parole release date is only presumptive. It is discretionary prologue to the Commission's final exercise of its discretion in setting an inmate's effective parole release date. Section 947.18, Florida Statutes, which was in effect at all times pertinent to this case, gives the Commission ultimate discretion to decide when to parole an inmate even though his presumptive parole release date may indicate an earlier date. See Gobie v. Florida Parole and Probation Commission, 416 So.2d 838 (Fla. 1st DCA 1982). The establishment of a presumptive parole release date by the Commission is not analogous to an inmate's accumulation of statutory gain time  the subject matter of the United States Supreme Court's opinion in Weaver.
Pursuant to Article V, Section 3(b)(4), of the Constitution of Florida, we certify that the following question passed upon by us in this cause is one of great public importance:
When, after the Florida Parole and Probation Commission has set a prisoner's presumptive parole release date, the prisoner commits another crime thereby requiring that a new presumptive parole release date be set, does the Commission violate state and federal proscriptions against ex post facto laws when, in fixing the new presumptive parole release date, it uses more stringent guidelines adopted by it after the latter crime was committed?
AFFIRMED.
WIGGINTON, J., concurs.
SHIVERS, J., dissents.
SHIVERS, Judge, dissenting:
The majority opinion holds that the retroactive application of the 1981 matrix guidelines in this case is not violative of the ex post facto clause. I respectfully dissent.
In view of the decision by the United States Supreme Court in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), I am compelled to find that the Commission's action in this case is violative of the ex post facto clause. In Weaver, a prisoner claimed that a Florida statute which altered the method of prisoner gain-time computation and which was enacted subsequent to the crime for which he was incarcerated, affected him detrimentally, and was, therefore, an ex post facto law. The United States Supreme Court agreed and set forth a twofold test for determining whether a law violated the constitutional prohibition against ex post facto laws: (1) does the law attach legal consequences to crimes committed before the law took effect, and (2) does the law affect the prisoners who committed those crimes in a disadvantageous fashion? If the answer to both questions is yes, then the law constitutes an ex post facto law and is void as applied to those prisoners.
*125 Under the facts of this case, both prongs of the Weaver test are met. First, the 1981 matrix guidelines attach the legal consequences of the Commission's computation of the PPRD to those who committed crimes before the effective date of the Rule. It is irrelevant that appellant has no vested right to parole or that parole is a matter of grace. A statute may be retrospective if it alters punitive conditions outside the sentence or changes "the quantum of punishment." Id., at 31-33, 101 S.Ct. at 966. Second, these consequences have a disadvantageous effect in that the 1981 guidelines clearly increase the time ranges used in computing the PPRD. This is evidenced by the fact that after appellant was convicted of his latest crime and given a one year sentence his PPRD was enhanced by over 10 years as a result of the application of the new guidelines. Thus, under the test established in Weaver, the retroactive application of the 1981 guidelines to crimes committed prior to September 10, 1981, clearly constitutes a violation of the ex post facto clause.
The majority as well as the Commission rely on Lopez v. Florida Parole and Probation Commission, 410 So.2d 1354 (Fla. 1st DCA 1982), as support for their contention that ex post facto does not apply. However, the holding in that case has no application here. In Lopez, this court held that the alteration of new matrix guidelines which increased matrix times and which took effect after the prisoner committed his crime was not violative of the ex post facto clause. However, there the court was careful to note that at the time of Lopez' crime, "the only expectation Lopez had regarding parole was that it would be at the discretion of the Commission." Since parole was discretionary at the time of Lopez' crime and the parole guidelines made parole a more objective determination, the court concluded that, under those facts, the adoption and amendment of objective guidelines was a procedural change which, if anything, was ameliorative. Thus, the deciding factor in Lopez was the fact that at the time of Lopez' crime there were no objective parole guidelines in effect.
The facts of this case are unlike those in Lopez in two important respects. First, unlike Lopez, the parole guidelines here were in effect at the time of appellant's crimes. And second, with the exception of appellant's latest conviction, the Commission had already set his PPRD under the matrix guidelines as they existed before they were amended. Based on these distinctions, Lopez provides no authority for finding that there is no violation of the ex post facto clause. In this case, I would hold that the amendment to the matrix guidelines is a substantive change which detrimentally affects appellant, and that, therefore, the Commission's retroactive application of the amended guidelines constitutes an ex post facto law. I would further hold that in order to avoid the prohibition against ex post facto laws in the future the Commission must use those objective guidelines in effect at the time of the commission of the crime, when such guidelines exist.
This conclusion is in accord with a recent decision of the United States Court of Appeals, Seventh Circuit, in Welsh v. Mizell, 668 F.2d 328 (7th Cir.1982), but in apparent conflict with three cases issued by this court from which I would now recede. In Overfield v. Florida Parole and Probation Commission, 418 So.2d 321 (Fla. 1st DCA 1982); Britt v. Florida Parole and Probation Commission, 417 So.2d 1079 (Fla. 1st DCA 1982); and Hurst v. Florida Parole and Probation Commission, 418 So.2d 444 (Fla. 1st DCA 1982), this court held that it is not a violation of the ex post facto clause for the Commission to use a matrix guideline which is not in effect at the time of the crime in determining a prisoner's PPRD. These decisions attempt to distinguish themselves from Weaver, on the basis of the statutory discretion retained by the Commission in establishing prisoners' release dates. Section 947.172, Fla. Stat. (1981), grants the Commission discretionary authority to aggravate or mitigate a matrix time and set a release date above or below the matrix time. In contrast to the matrix guidelines involved in Britt, Overfield and Hurst, the statutory gain-time provisions in Weaver *126 automatically reduced, without discretionary decision-making, the time to be served. Based on this distinction, the Britt and Overfield court reasoned that since the Commission retained discretion to set a release date above or below the matrix time, the retroactive application of an amended matrix guideline which had the effect of uniformly increasing the matrix time ranges did not constitute an increase in punishment and was not, therefore, illegal.
The decision by the United States Circuit Court of Appeals in Welsh, supra, explains why I believe the holding in the instant case to constitute an improper application of the rule in Weaver. In Welsh, the State of Illinois had significantly changed the statutory criteria for parole eligibility after the date of Welsh's crime. At the time of Welsh's crime the emphasis had been on preventing further crimes by the particular candidate for parole (special deterrence). Thereafter, the criteria were amended to reflect a philosophy of general deterrence  that a prisoner should not be paroled so long as his incarceration might deter other potential offenders. Welsh's application for parole was considered under general deterrence criteria, and he argued that this contravened the ex post facto clause of the United States Constitution. Citing Weaver as authority, the court in Welsh agreed on the ground that the new criteria altered the Parole Commission's discretion in determining parole eligibility and resulted in a substantial harm to Welsh. Id., at 331. In rejecting the State's defense to the ex post facto challenge the court went to great length to dispel what it called "two misconceptions" concerning the successful assertion of an ex post facto claim. First, the court stated that a prisoner does not have to show that he has a vested right to be paroled. Second, the court explained that it is not an answer to an ex post facto challenge to say that parole is a matter of "legislative grace." On that point, the court added that while it is true that parole is commonly referred to as a matter of grace, it is more accurate to say that a prisoner's entitlement to parole lies in the discretion of the parole board. Id., at 328. In recognition of this fact, the court in Welsh concluded by stating that:
Even discretionary decisions are made under some constraints. We hold that the constraints on the Parole Board's discretion in Welsh's case must be those contained in the statute and regulations that were in effect in 1962 [the date of Welsh's crime], not those subsequently enacted.
Id., at 328.
As in Welsh, I believe that the Weaver decision requires a finding that the constraints on the Parole Commission's discretion must be those contained in the statute and regulations in effect at the time of the prisoner's crime. There can be no question that the matrix guidelines place constraints on the Commission's exercise of discretion in setting a prisoner's release date, and that the new guidelines have altered the Commission's discretion so as to delay a prisoner's eligibility for parole. While the Commission has discretion to fix a release date above or below the matrix time, that discretion is constrained by the matrix guidelines. The matrix time is always the reference point from which the Commission begins the exercise of its discretionary authority. Thus, when the matrix guidelines are amended so that the matrix time ranges are uniformly raised, as was done in 1981, and those guidelines are retroactively applied, this necessarily delays a prisoner's eligibility for parole. For example, in May's case when his PPRD was initially set under the pre-1981 guidelines the aggregate total of the matrix times for all of the crimes that were scored at that time equalled 83 months. For the same crimes, under the 1981 guidelines, the Commission assessed May a matrix time of 308 months resulting in an 18 year and 9 month (225 months) increase in May's matrix time. Although the Commission chose to aggravate May 151 months under the pre-1981 guidelines but not under the 1981 guidelines, it is obvious that even when the aggravation factor is considered, May's eligibility for parole is still substantially delayed by a total of 6 years and 2 months (74 months) all because *127 he was convicted of a crime for which he was given a one year sentence. We note that this 74 month enhancement in May's PPRD does not take into account the 4 years that were added to his release date because of his latest conviction which triggered the retroactive application of the new guidelines. Moreover, we note that May's release date could have been further delayed by the Commission's decision to aggravate May and set his release date above the matrix time, which the Commission was free to do. From the above, it is clear that the Commission's discretion in setting a release date above or below the matrix time is always going to be a direct function of the matrix time and the matrix guidelines used to calculate the matrix time. Likewise, it is equally clear that whenever the guidelines are uniformly amended to increase the time ranges, this inevitably alters the Commission's discretion and detrimentally affects prisoners by delaying their eligibility for parole.
For the reasons set forth in the above dissent, I would reverse the order of the Commission in establishing appellant's PPRD and remand the matter to the Commission with instructions to reinstate appellant's original PPRD for the crimes that were scored under the pre-1981 guidelines and to reestablish a PPRD for appellant's latest conviction under the matrix guidelines in effect at the time of that crime. To the extent that Rule 23-21.18(1) and (3), Fla. Admin. Code, authorizes the Commission to retroactively apply matrix guidelines not in effect at the time of the crime, I would declare it invalid.
I would also certify the following question to the Florida Supreme Court as presenting a question of great public importance:
When matrix guidelines are in effect at the time of the commission of a crime, does the Commission violate the ex post facto clause by determining a prisoner's presumptive parole release date based on the retroactive application of amended matrix guidelines which uniformly increase the matrix times?