435 So.2d 834 (1983)
Robert MAY, Petitioner,
v.
FLORIDA PAROLE AND PROBATION COMMISSION, Respondent.
No. 63108.
Supreme Court of Florida.
July 21, 1983.
*835 Ronald D. Combs, Florida Institutional Legal Service, Inc., Gainesville, for petitioner.
Doris E. Jenkins, Asst. Gen. Counsel, Florida Parole and Probation Com'n, Tallahassee, for respondent.
Steven L. Seliger, Quincy, for amicus curiae.
Stephen B. Bright, Christine A. Freeman and Robert E. Morin, Atlanta, Ga., for Florida Clearinghouse on Criminal Justice, amicus curiae.
McDONALD, Judge.
Robert May, a prisoner in custody of the Florida Department of Corrections, seeks review of May v. Florida Parole & Probation Commission, 424 So.2d 122 (Fla. 1st DCA 1982), which affirmed an order of the Parole and Probation Commission setting a new presumptive parole release date (PPRD) for May. In affirming the commission's order, the district court certified the following question to be of great public importance:
When, after the Florida Parole and Probation Commission has set a prisoner's presumptive parole release date, the prisoner commits another crime thereby requiring that a new presumptive parole release date be set, does the Commission violate state and federal proscriptions against ex post facto laws when, in fixing the new presumptive parole release date, it uses more stringent guidelines adopted by it after the latter crime was committed?
Id. at 124. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We approve the district court's decision and answer the certified question in the negative.
The facts, as set out in the district court's opinion, are:
Appellant May is serving sentences in the state prison for several felony convictions. On December 3, 1980, his presumptive parole release date (PPRD) was initially set for July 31, 1984, under the then-existing (1979) matrix guidelines established by rule of the Commission for determining such tentative release date. On May 30, 1981, while still in prison, appellant was convicted of the crime of introduction of contraband into a correctional institution and was sentenced to one year in prison to run consecutively with his previous sentences. Based on this conviction, the Commission reinterviewed appellant, aggregated his present and previous convictions and recalculated his PPRD based on new matrix time ranges adopted by the Commission on September 10, 1981 (Rule 23-21.09, Florida Administrative Code).
Id. at 123. The recalculated PPRD was October 4, 1994, approximately ten years and two months beyond May's original PPRD.
May strongly urges, as did Judge Shivers in his dissent, id. at 124-127, that the parole date guidelines adopted after May committed his in-prison offense cannot be used in recalculating his PPRD to take account of that offense. He argues that using the new guidelines amounts to an unconstitutional ex post facto application of those more stringent guidelines. The principal authority cited in support of this argument is *836 Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).
The United States Supreme Court in Weaver reversed Harris v. Wainwright, 376 So.2d 855 (Fla. 1979), and Weaver v. Graham, 376 So.2d 855 (Fla. 1979). In Harris this Court found constitutional the application to Harris and Weaver of a statute repealing an earlier statute and reducing the amount of "gain time" for good conduct and obedience to prison rules. The United States Supreme Court declared that applying the new statute to Weaver was an unconstitutional ex post facto application because Weaver's crime had been committed before the statute's enactment. In so holding the Court summarized its decisions as providing
that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.
450 U.S. at 29, 101 S.Ct. at 964 (citations and footnotes omitted). The Court further held that "a law need not impair a `vested right' to violate the ex post facto prohibition." Id. (Footnote omitted.) May contends that these precepts of Weaver should apply to his situation and that they clearly prohibit as ex post facto the use of the 1981 parole guidelines in establishing for him a new PPRD considerably farther in the future than his initial PPRD which was established by using the 1979 guidelines. Finding Weaver to be distinguishable from the present case, we disagree.
We recognize Weaver's declaration that "[t]he presence or absence of an affirmative, enforceable [i.e. "vested"] right is not relevant ... to the ex post facto prohibition." 450 U.S. at 30, 101 S.Ct. at 965. Nevertheless, where a prisoner can establish no more than a tenuous expectancy regarding probable punishment under the law existing at the time of his offense, it becomes difficult or impossible to establish the second ex post facto element required by Weaver, i.e., that the retrospectively applied law disadvantages the offender affected by it.
Although Weaver had no vested or enforceable right to gain time, and although allowance of any gain time is a matter of grace, the mandatory language of the law in effect the time of Weaver's crime and conviction[1] made possible a judicial determination that retrospective application of the subsequently enacted statute operated to Weaver's disadvantage. Under the subsequently repealed act the Department of Offender Rehabilitation was required to deduct a prescribed number of days per month from the sentence of any prisoner who committed no prison rules infraction and who was "faithful, diligent, industrious, orderly, and peaceful" in the performance of tasks assigned to him.[2] The retrospectively applied statute, on the other hand, provided fewer days off, per month, for gain time.[3] Thus, the language of the statutes *837 made it plain that it was to Weaver's distinct disadvantage, assuming only his continued good behavior in prison, to have the latter statute applied to him.
In State v. Williams, 397 So.2d 663 (Fla. 1981), we followed the Weaver rationale and concluded that the trial court's retention of jurisdiction for the first one-third of William's sentence, under a statute enacted after the commission of the offense for which Williams was convicted, constituted an ex post facto application of the statute. In Williams, as in Weaver, comparing the law in effect at the time Williams committed the crime with the retrospectively applied statute clearly reveals that application of the latter disadvantaged Williams.[4]
In sharp contrast to Williams' and to Weaver's statutorily based expectations of earning gain time at a statutorily prescribed rate, Florida law at the time of May's offense provided him with only eligibility for parole consideration (assuming good behavior during confinement).[5] It is true that the commission has developed and implemented, as required by law,[6] objective parole guidelines as the criteria upon which parole decisions are made. Nevertheless, chapter 947, Florida Statutes, taken as a whole, leaves the ultimate parole decision to the discretion, albeit guided by its own administrative rules, of the commission.[7]
We are unable to assume, as May would have us, that the implementation of objective parole guidelines has rendered section 947.18 mere surplusage. Indeed, the use of the terms "guidelines" and "presumptive parole release date" clearly conveys the message that the final parole decision will depend upon the commission's finding that the prisoner meets the conditions provided in section 947.18. It is precisely this discretionary element that distinguishes May's circumstances from Weaver's and which mandates a fundamentally different ex post facto analysis and outcome.
We conclude that, had the commission applied the pre-1981 guidelines in setting May's PPRD following his 1981 offense, it could still have exercised its discretion to delay the PPRD beyond that provided by the guidelines. May argues, correctly, that the commission must provide written reasons for any variance from the parole dates suggested by the objective guidelines.[8] It is not unreasonable to assume, however, that the very reasons which prompted the commission to adopt the more stringent 1981 guidelines, applicable to prisoners generally, would also have served as sufficient justification for going beyond the 1979 *838 guidelines in May's individual case. Thus, May has failed to establish Weaver's second element of a violation of the ex post facto prohibition. There is no showing that the retrospective application of the new guidelines resulted in more onerous or disadvantageous treatment than he would have received under the old guidelines. It can make no possible difference to May whether his PPRD of October 4, 1994 was determined by retrospective application of the 1981 guidelines, as promulgated by the commission, or by reasonable exercise of the commission's discretion in enhancing the parole date suggested under the 1979 guidelines. In either event May received all that was provided by law at the time of his offense  the reasonable, guided exercise of the commission's discretion.
Returning one final time to Weaver, we note Justice Marshall's statement that
[c]ritical to relief under the Ex Post Facto clause is not an individuals's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.
450 U.S. at 30, 101 S.Ct. at 965 (emphasis in original). May has clearly suffered no legislative increase in punishment. Furthermore, even if we assume the rationale of Weaver may in some circumstances apply to administrative rulemaking, there can be no violation of the ex post facto clause where, as here, there is no proof that the retrospectively applied rule disadvantaged the person affected.
We therefore answer the certified question in the negative and approve the district court's decision.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and EHRLICH, JJ., concur.
SHAW, J., concurs in result only.
ADKINS, J., dissents.
NOTES
[1] § 944.27(1), Fla. Stat. (1975), in effect at the time of Weaver's crime, conviction and sentencing, provided:

(1) The [Department of Offender Rehabilitation] shall grant the following deductions for gain-time from the sentences of every prisoner who has committed no infraction of the rules or regulations of the [department], or of the laws of the state, and who has performed in a faithful, diligent, industrious, orderly, and peaceful manner the work, duties, and tasks assigned to him, to wit:
(a) Five days per month off the first and second years of his sentence;
(b) Ten days per month off the third and fourth years of his sentence; and
(c) Fifteen days per month off the fifth and all succeeding years of his sentence; and he shall be entitled to credit for a month as soon as he has served such time as, when added to the deduction allowable, would equal a month.
(Footnote omitted, emphasis added.)
[2] Id.
[3] § 944.275(1), Fla. Stat. (1979), provides:

(1) The department shall grant the following deductions for gain-time on a monthly basis, as earned, from the sentence of every prisoner who has committed no infraction of the rules of the department or of the laws of the state and who has performed in a satisfactory and acceptable manner the work, duties, and tasks assigned, as follows:
(a) Three days per month off the first and second years of the sentence;
(b) Six days per month off the third and fourth years of the sentence; and
(c) Nine days per month off the fifth and all succeeding years of the sentence; and the prisoner shall be entitled to credit for a month as soon as the prisoner has served such time as, when added to the deduction allowable, would equal a month.
[4] The statute retrospectively applied to Williams, § 947.16, Fla. Stat. (Supp. 1978), not only granted the trial court a previously nonexistent parole veto, but also prevented the release of the defendant due to gain time during the portion of the sentence over which jurisdiction was retained. Thus, the subsequently enacted statute imposed a new obstacle to parole and cut off a statutory right to gain time.
[5] § 947.16(1), Fla. Stat. (1979).
[6] § 947.165, Fla. Stat. (1979).
[7] § 947.18, Fla. Stat. (1979), in particular, allows the commission a repository of discretion in the ultimate parole decision. It provides:

947.18 Conditions of parole.  No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission shall find that there is reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society. No person shall be placed on parole unless and until the commission is satisfied that he will be suitably employed in self-sustaining employment, or that he will not become a public charge. The commission shall determine the terms upon which such persons shall be granted parole. In addition to any other lawful condition of parole, the commission may make the payment of the debt due and owing to the state under s. 960.17 a condition of parole, subject to modification based on change of circumstances.
[8] § 947.172, Fla. Stat. (1979).