743 So.2d 118 (1999)
Jerry GAINES, Petitioner,
v.
FLORIDA PAROLE COMMISSION, Respondent.
No. 98-3382.
District Court of Appeal of Florida, Fourth District.
September 22, 1999.
Jerry Gaines, Miami, pro se.
Bradley R. Bischoff, Assistant General Counsel, Tallahassee, for respondent.
WARNER, C.J.
In this petition for certiorari, prisoner Jerry Gaines seeks review of the circuit court's order dismissing his petition for writ of mandamus against the Florida Parole Commission concerning his eligibility *119 for parole release.[1] While Gaines had alleged that application to his sentence of section 947.1745(6), Florida Statutes (1997), which requires notification to the sentencing judge of any proposed prisoner release under parole, was a violation of the ex post facto clause, the court disagreed and determined that the statute was not unconstitutional, relying on Gattis v. Florida Parole Commission, 535 So.2d 640 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla.1989). We agree with Gattis as to the constitutional application of the statute. However, we quash the decision based on Gaines' second argument, that the Parole Commission failed to notify the sentencing judge, who was serving as a senior judge.
In 1977, Gaines was found guilty of second degree murder and unlawful possession of a firearm by a convicted felon and was sentenced by Dade Circuit Court Judge Ellen Morphonios to life imprisonment for the murder and a concurrent 15 year sentence for the firearm conviction. Under the statutory parole system in effect at the time, a sentencing judge could retain jurisdiction over a defendant's sentence so that the judge's approval as well as that of the parole commission was necessary for the prisoner's release. See § 947.16(3), Fla. Stat. (Supp.1978). Judge Morphonios did not retain jurisdiction for this purpose. Several presumptive parole release dates ("PPRD") were set for Gaines, the changes to which are not germane to this appeal. Eventually, the Commission set a presumptive parole date of September 7, 1992.
On October 1, 1986, the Florida Legislature amended section 947.1745(4), Florida Statutes, to require the Commission to notify and seek comments from the sentencing court when an inmate was within 90 days of his or her effective parole release date ["EPRD"] interview. The statute was further amended and codified as section 947.1745(6) and now requires the following:
If the sentencing judge is no longer serving, the notice must be sent to the chief judge of the circuit in which the offender was sentenced. The chief judge may designate any circuit judge within the circuit to act in the place of the sentencing judge. Within 30 days after receipt of the commission's notice, the sentencing judge, or the designee, shall send to the commission notice of objection to parole release, if the judge objects to such release. If there is objection by the judge, such objection may constitute good cause in exceptional circumstances as described in s. 947.173, and the commission may schedule a subsequent review within 2 years, extending the presumptive parole release date [PPRD] beyond that time. However, for an inmate who has been ... [c]onvicted of murder ... the commission may schedule a subsequent review under this subsection once every 5 years, extending the [PPRD] beyond that time.... If the judge remains silent with respect to parole release, the commission may authorize an [EPRD]....
Pursuant to the 1986 statute, the Commission notified Chief Judge Leonard Rivkind of Gaines' parole release, as Judge Morphonios had retired in 1991. Judge Rivkind objected to the release. Based on the comments of the judge, the Commission extended Gaines' PPRD to September 7, 1997.
On May 12, 1997, Judge Alex Ferrer, who was appointed pursuant to section 947.1745(6), Florida Statutes (1997), by Chief Judge Rivkind to act in place of Judge Morphonios for the purposes of commenting on Gaines' release, responded to the Commission's inquiry and objected to his release on parole. The petition alleges that Judge Morphonios was also contacted by Gaines' daughter and responded to his prospective parole by stating, "it is my position to remain silent on this issue [of Gaines' parole release]. I cannot, however, *120 speak for any other judge in this jurisdiction."
Based on Judge Ferrer's objection, the Commission extended Gaines' PPRD to September 2002. Gaines sought and was denied administrative review of the Commission's decision. In July 1998, Gaines filed a petition for mandamus which is the subject of this certiorari proceeding. In it, he alleged that section 947.1745 was unconstitutionally applied to him. He also alleged that the Commission failed to comply with the statute, because Judge Morphonios still serves as a judge and that as his sentencing judge, should have been solicited for comments by the Commission. The trial court dismissed the petition without obtaining a response. Citing Gattis, 535 So.2d at 641-42, the court determined that the statute did not constitute an ex post facto law. Additionally, the judge found that the Commission acted in accordance with the statute by sending notice to the Chief Judge, who in turn designated Judge Ferrer to act in place of the sentencing judge. The order noted that, due to her retirement in 1991, Judge Morphonios was no longer serving as a judge in the Eleventh Circuit when notice of Gaines' impending release was sent to that court. Gaines seeks certiorari relief from that decision. Our review on certiorari is limited to a determination of whether the trial court departed from the essential requirements of law or denied Gaines due process in dismissing his mandamus petition. See Sheley v. Florida Parole Comm'n, 720 So.2d 216 (Fla.1998).
In Gattis, 535 So.2d at 641-42, the first district determined that application of the procedures of section 947.1745 to prisoners convicted prior to its enactment was not an ex post facto violation of the Florida Constitution. However, that same court later suggested in dictum that the statute may indeed constitute such a violation. See Williams v. Florida Parole Comm'n, 625 So.2d 926, 935-36 (Fla. 1st DCA 1993), rev. denied, 637 So.2d 236 (Fla.1994), receded from on other grounds in Sheley, 703 So.2d at 1206. It observed that retrospective application of the section would permit the circuit judge to object to a parole release even though that judge had previously declined to retain jurisdiction over the sentence for that purpose under the prior law. See id. Upon our own analysis of the issue, we conclude that the application of section 947.1745(6) to a prisoner sentenced before its enactment does not constitute an ex post facto violation.
In considering the earlier version of Florida's parole release guidelines, the court in Paschal v. Wainwright, 738 F.2d 1173, 1175-76 (11th Cir.1984), summarized the following guideposts for considering an ex post facto challenge:
The Supreme Court has held that three critical elements must be present to establish an ex post facto clause violation: the statute must be a penal or criminal law, retrospective, and disadvantageous to the offender because it may impose greater punishment. Weaver v.. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). A law may violate the ex post facto prohibition even if it "merely alters penal provisions accorded by the grace of the legislature," id. at 30-31, 101 S.Ct. at 965; it need not impair a "vested right." Id. A law which is merely procedural and does not add to the quantum of punishment, however, cannot violate the ex post facto clause even if it is applied retrospectively. Id. at 32-33 & n. 17, 101 S.Ct. at 966 & n. 17. See Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) ("even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto.").
(footnotes and some citations omitted). In Dobbert, 432 U.S. at 293, 97 S.Ct. at 2298, the United States Supreme Court held that Florida's revised death penalty sentencing statute, enacted in the wake of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was procedural rather than punitive, as it merely altered *121 the methods employed to determine whether the death penalty should be imposed and was actually ameliorative as compared to Florida's prior death penalty law.
Similarly, in Paschal, as cited in Gattis, the court declined to find an ex post facto violation where Florida's newly enacted parole guidelines simply formalized the process by which the Parole Commission exercised its discretion in deciding parole eligibility. See Paschal, 738 F.2d at 1177 (prior to enactment of Florida's Parole Act, the system for determining parole eligibility lacked objective criteria). In May v. Florida Parole and Probation Commission, 435 So.2d 834, 835 (Fla.1983), also cited in Gattis, the Florida Supreme Court rejected an ex post facto challenge to presumptive parole "matrix guidelines" that were more restrictive than those that existed at the time of May's offense. The court emphasized that the revised parole guidelines did not automatically determine the time to be served by the prisoner; other considerations came into play, and the Parole Commission retained ultimate discretion whether to parole an inmate.
In Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), application of the revised gain-time statutes automatically and mandatorily affected the length of incarceration, without discretionary decision-making by penal officials. The same was true for the judicial retention statute at issue in State v. Williams, 397 So.2d 663 (Fla.1981), which not only gave the sentencing judge veto power over the parole decision but also cut off the prisoner's right to gain time. In May, 435 So.2d at 837, the court observed that in "sharp contrast to Williams' and Weaver's statutorily based expectations of earning gain time at a statutorily prescribed rate, Florida law at the time of May's offense provided him with only eligibility for parole consideration (assuming good behavior during confinement)." (emphases in original)(footnote omitted). The court opined that:
where a prisoner can establish no more than a tenuous expectancy regarding probable punishment under the law existing at the time of his offense, it becomes difficult or impossible to establish the second ex post facto element required by Weaver, i.e., that the retrospectively applied law disadvantages the offender affected by it.
Id. at 836. It was "precisely this discretionary element that distinguishe[d] May's circumstances from Weaver's and which mandate[d] a fundamentally different ex post facto analysis and outcome." Id. at 837. Unlike Weaver, "May received all that was provided by law at the time of his offense-the reasonable, guided exercise of the commission's discretion." Id. at 838.
In Gattis, 535 So.2d at 641, the first district held that section 947.1745(4) did not violate the ex post facto clause because both prior to and after the statute's enactment, the Parole Commission retained discretion in setting an inmate's parole date. The first district held that the requirement in section 947.1745(4) that the Parole Commission obtain input from the sentencing court was a "mere procedural change in or enlargement of the manner by which the Commission may exercise its discretion." Id. at 642.
[i]t must be kept in mind, Florida law at the time of Gattis' offense provided him with only eligibility for parole consideration and "the use of the terms `guidelines' and `presumptive parole release date' clearly conveys the message that the final parole decision will depend upon the commission's finding that the prisoner meets the conditions provided in section 947.18." May v. Florida Parole and Probation Commission, 435 So.2d at 837.
Id.
Applying the three-prong test identified in Paschal and Weaver, we find that section 947.1745(6), as applied to Gaines, is retroactive, and penal (i.e., criminal rather than civil), but not disadvantageous as that test is employed in the case law. Although *122 the sentencing judge or a designated substitute judge can negatively influence Gaines' chances for parole, both under the old parole system and the one now being applied to Gaines, the Parole Commission ultimately retains the discretion to grant parole despite a judge's objection. Gaines has no guaranteed right to release at a certain time, based on a certain formula, unlike Weaver and Williams. Additionally, section 947.1745(6), like the death penalty statute at issue in Dobbert, is procedural rather than punitive, as it merely altered the methods employed to determine whether the inmate should be paroled.
In conclusion, even though section 947.1745(6) may work to Gaines' disadvantage by placing a potential additional obstacle in his path to parole, the statute is procedural rather than punitive, because the judge's objection does not foreclose parole; the Parole Commission still retains the discretion to set an effective parole release date. See § 947.1745(6) (objection by judge "may constitute good cause in exceptional circumstances" to extend the presumptive parole release date) (emphasis added); Dobbert, 432 U.S. at 293, 97 S.Ct. at 2298 ("[e]ven though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."). Additionally, the statutory change in Florida's parole system does not clearly or automatically disadvantage Gaines. See May, 435 So.2d at 837.[2]
As to the second issue, we hold that Gaines has raised a prima facie claim requiring the trial court to issue an order to show cause why mandamus relief should not be granted. See Quigley v. Satz, 596 So.2d 753 (Fla. 4th DCA 1992); Holcomb v. Department of Corrections, 609 So.2d 751 (Fla. 1st DCA 1992). The petition alleges that Judge Morphonois continues to serve as a judge, despite her official retirement.[3]
The statute requires the Parole Commission to notify and request comment from the sentencing judge. Only if that judge "is no longer serving" is the Chief Judge of the circuit notified and input requested of the chief or the chief's designee. Nowhere does the statute define "service." Construing the statute in favor of the prisoner, see section 775.021(1), Florida Statutes, we conclude that "service" may include acting as a senior judge, at least where that judge is acting under a general appointment and not an appointment restricted to one particular case.
It seems to us that if the sentencing judge is still available for comment because she is still serving, albeit as a senior judge, then it is appropriate to obtain her input, as opposed to that of a judge who did not participate in the original case. As noted in Gaines' petition, Judge Morphonios, in her letter to Gaines' daughter, stated that her position was to remain silent as to whether Gaines should be paroled. Under the statute, if the sentencing judge "remains silent with respect to parole release, the commission may authorize an [EPRD]." § 947.1745(6)(c). Although it is a discretionary act of the Commission to grant parole, in this case the Commission only had the negative comment of Judge Ferrer and based its *123 decision to deny parole on his objection. Had the Commission notified the sentencing judge and obtained her input, it may have decided differently.
We do not decide that in this case Judge Morphonios was "serving" so as to require notice to her and her comment. That decision is left to the trial court after an evaluation of the extent of her appointment and any other factual considerations. We therefore quash the order dismissing the complaint and remand for the trial court to issue an order requiring the Commission to respond to the petition on the claim that it failed to secure comment from the sentencing judge within the meaning of the statute.
HAZOURI, J., concurs.
STONE, J., concurs in part and dissents in part.
STONE, J., concurring in part and dissenting in part.
I dissent from that part of the opinion quashing the order dismissing the complaint. In my judgment, the term "serving," as used here, is inapplicable to a retired judge. In all other respects, I concur.
NOTES
[1] At the time of filing, Gaines was incarcerated within the Fifteenth Circuit.
[2] In terms of the additional obstacle to parole, Gaines correctly asserted in his mandamus petition that from 1977 to 1986, the parole commission was not required to receive opinions or objections from judges before making parole decisions. However, it is worth noting that in State v. Williams, 397 So.2d at 665, the supreme court noted "that for many years prior to section 947.16's enactment, the Parole and Probation Commission informally gave notice to the sentencing judge of a prisoner's parole date and sought the judge's comments. Our decision today should in no manner restrict the commission from seeking information or advice from any source concerning a prisoner's parole."
[3] Several recent cases also show that the judge is actively serving as a judge. See, e.g., Acosta v. State, 711 So.2d 225 (Fla. 3d DCA 1998); Williams v. State, 707 So.2d 1204 (Fla. 3d DCA 1998); Peri v. State, 695 So.2d 490 (Fla. 3d DCA 1997); Fairell v. State, 662 So.2d 428 (Fla. 3d DCA 1995).