625 So.2d 926 (1993)
Billy WILLIAMS, Appellant,
v.
FLORIDA PAROLE COMMISSION, Appellee.
No. 91-112.
District Court of Appeal of Florida, First District.
October 15, 1993.
*928 Billy Williams, pro se.
Bradford L. Thomas, Asst. Gen. Counsel, Florida Parole Com'n, Tallahassee, for appellee.

ON MOTION FOR REHEARING
ZEHMER, Chief Judge.
Upon consideration of the Florida Parole Commission's motion for rehearing, the original opinion filed in this cause is withdrawn and the following opinion is substituted therefor. The motion for rehearing is granted to the extent of certain revisions in this substituted opinion; in all other respects, the motion is denied.
Billy Williams is an inmate at DeSoto Correctional Institution. Upon reaching his presumptive parole release date (PPRD) of July 16, 1990, he was notified that this date had been suspended by the Florida Parole Commission and that he had been denied an effective parole release date (EPRD) pursuant to section 947.18, Florida Statutes (1989). He filed a petition for writ of mandamus in the circuit court below, praying the court to direct the Commission to "RE-ESTABLISH [his] presumptive parole release date" and reconsider his release. The petition was denied and Williams appealed. For the reasons discussed herein, we reverse and remand for further proceedings.

I.

THE FACTS
The record in this case consists of the petition, the Commission's response, Williams's reply thereto, and numerous documents from the Commission's file attached to these pleadings. The following facts are distilled from those documents.
In December 1978, at the age of 19, Williams was convicted in a jury trial of having committed the offenses of involuntary sexual battery and kidnapping of a young woman. The aggravating circumstances surrounding the commission of the offenses caused Circuit Judge Virginia Beverly of Duval County to sentence Williams to 30-year and 50-year terms of imprisonment, to be served consecutively. However, the judge did not reserve jurisdiction to review future parole orders entered by the Commission, as section 947.16(3), Florida Statutes (Supp. 1978),[1] then authorized.
*929 Williams was turned over to the Department of Corrections, and in November 1979, after the initial parole interview had been conducted, the Commission established Williams's PPRD at July 16, 1991, with the notation that this PPRD was at the bottom of the matrix time range. Upon his next interview in November 1981, the hearing examiner recommended a 12-month reduction in Williams's PPRD to July 16, 1990, "in view of outstanding institutional adjustment and overall program participation... ." The Commission approved the examiner's recommendation and set Williams's PPRD at July 16, 1990.
During the ensuing eight years, in addition to the regularly scheduled interviews, Williams filed several requests for review and reduction of his PPRD pursuant to section 947.173, Florida Statutes, pointing out such things as his clean institutional disciplinary record, award of his high school diploma and certificates for completing various institutional programs in horticulture, small engines, outboard engines, human relations, etc., and his satisfactory participation in various work programs. In March 1982, the Commission declined to reduce Williams's PPRD, based on consideration of "your adjustment and program participation, as well as the seriousness of your offenses and the fact that your time was originally set at the bottom of the matrix time range... ." In August 1983, the Commission rejected the hearing examiner's recommendation to reduce Williams's PPRD by 12 months, and upon consideration of his review request, explained that:
The Commission in agreement with the Department of Corrections implemented a Sweep of the institutions to consider all cases designated by Department of Corrections to be youthful offenders. In your case, the Commission chose not to modify your PPRD. Such action is within the discretionary powers of the Commission and no error was found.
Mitigation factors to include clear disciplinary record, good adjustment, prior record, work reports, and program participation have all be [sic] considered.
In June 1985, after the hearing examiner recommended a 24-month reduction in Williams's PPRD based on outstanding work reports, a quorum of the Commission declined to change the PPRD pending receipt of a requested mental health status report. Williams requested review of that decision by the entire Commission (as is authorized by the Commission's rules) and reiterated, among other things, his outstanding prison record, his participation in every assigned program, the receipt of additional certificates in vocational auto body work, life skills, drug group, growth group, and several Bible study certificates. He represented that he had a job and home awaiting him upon his release. He complained that he had never before been directed to have a mental health evaluation. After reviewing the mental health status report dated July 23, 1985, however, the full Commission, in October 1985, declined Williams's request for further reduction. (This health report was not made part of the court record in this case.) In November 1985, in response to another review request, the Commission explained:
The Commission has reviewed your appeal pursuant to Florida Statute, Chapter 947.173, and found no cause to change your presumptive parole release date of July 16, 1990. The Commission has reviewed your file and found all factors were considered at your recent biennial review and review of the Mental Health Status Report dated 7/23/85. The Commission determined that a reduction in your presumptive parole release date was not warranted... . You have presented no information which causes the Commission to alter your presumptive parole release date at this time... .
*930 In June 1986, the Commission declined Williams's request for a Mutual Participation Agreement because, "The severity of your offense is so significant that a reduction by Contract of your parole date wouod [sic] promote disrespect for the law and tend to depreciate the seriousness of your criminal behavior."
In April 1987, the Commission reviewed the hearing examiner's recommendation to reduce Williams's PPRD by 30 months based on the finding that, "This inmate has an excellent history of program involvement as evidenced by his completion of required DOC programs and completion of Self Awareness and Stress Management." It denied any change in the PPRD, and Williams petitioned for review pursuant to section 947.173, representing, among other things, that he had "completed ALL the groups that the D.O.C. recommends and various vocational courses." In June 1987, the Commission denied this appeal reciting that, "The mitigation presented in your appeal was considered by the Commission, however, no cause was found to alter your Presumptive Parole Release Date of 7/16/90 due to the seriousness of your offense."
In March 1989, the Commission reviewed the hearing examiner's recommendation to reduce Williams's PPRD by six months based upon the finding that, "Since last interview of 3/16/87 and Commission Action of 6/17/87, inmate Williams has a good record of institutional adjustment as evidenced by the awardment [sic] of the maximum amount of gain time, his disciplinary free status and a positive Mental Health Status Report." Again, the Commission declined to change the PPRD, and Williams petitioned for review pursuant to section 947.173, asserting, inter alia, that he had a positive mental health status report and had completed all institutional recommended groups, including psychological counseling. In May 1989, the Commission denied relief, reciting in part:
The Commission, in reaching its decision, took several factors into account, to wit: prior criminal record, offense severity, victim impact, time served, as well as institutional conduct/adjustment, custody status/reductions, extent of all program participation and the recommendation of the Parole Examiner. Taking all factors into consideration, the Commission decided not to modify your assigned date at this time. The areas which you offer as mitigation were available to the Commission and [considered] at the time of its prior action.
The Commission would strongly suggest that you become involved in all sex offender therapy programs. The Commission, at its meeting on 4-26-89, could find no further cause to modify your assigned date at this time. Your PPRD remains 7-16-90.
By April 1990, as Williams was approaching within 90 days of his July 16, 1990, parole release date, the Commission, as required by section 947.1745, Florida Statutes (1989),[2] and Commission rule 23-21.015, Florida Administrative Code, scheduled the required final interview to establish an effective parole release date, i.e., to determine whether Williams would be released on July 16, 1990, in accordance with his PPRD.
Pursuant to section 947.1745(4),[3] the Commission notified Judge Beverly by letter that *931 Williams was within 90 days of his effective parole release date, and advised that the judge had 30 days upon receipt of the notice to inform the Commission of any objection to Williams's release on parole. While this letter is part of the judicial record, we cannot identify the documentary information sent along with it. Judge Beverly responded by letter, dated April 16, 1990, stating that she would not favor releasing Williams until he has been rehabilitated, because:
... The last report contained in the file forwarded to me and dated June 18, 1985, suggests that he had unrecognized hostility, and had unusual interpretations of the world around him, that he was then still an impulsive individual who used acting out as a defense against anxieties.
The crime for which he was sentenced was composed of a series of intentional sequential acts and I do not want to see him released until he has been certified as not posing a predictable threat to other members of society.
The effective parole release date interview was held on April 27, 1990, and it was determined that Williams's PPRD would remain at 7/16/90, but that "YOUR CASE IS BEING DOCKETED FOR 6/6/90 FOR EXTRAORDINARY REVIEW." This extraordinary review is authorized and controlled by procedures in rule 23-21.0155, Florida Administrative Code. The Commission's report of June 12, 1990, declined to authorize an effective parole release date and set forth the reasons for its decision in considerable detail. The report first described the details of the offenses (apparently taken from the presentence investigation report)[4] and referred to Williams's prior criminal record as a juvenile.[5] As additional reasons for its decision, the Commission's report cited Williams's history of substance abuse before his incarceration,[6] health assessments of Williams including his classification as a "mentally disordered sex offender,"[7] his participation in Department of Corrections' programs and negative prognosis as a repeat offender,[8] official *932 opposition to his release received from Judge Beverly,[9] and the lack of significant effect to be given his rehabilitative efforts in prison to date.[10] The report concluded that:
Based on the foregoing, the Commission is drawn to the conclusion that a reasonable doubt exists with regard to whether Inmate Williams would remain free of any criminal conviction should parole be granted in his case. The Commission, therefore, by this action, suspends inmate Williams' presumptive parole release date of July 16, 1990, pursuant to 947.18, Florida Statutes.[11]
Williams petitioned on a Commission form for review of this decision pursuant to section "947.73 [sic], Florida Statutes, 1978 Supplement." He complained that, among other things, the Commission changed his PPRD based on old information previously considered. He was denied relief by the Commission's order, dated July 27, 1990, which recited:
The Commission did NOT change your Presumptive Parole Release Date.
Pursuant to 947.173, F.S., the Commission reviewed your appeal of the 6/6/90 Commission action which suspended your presumptive parole release date. Section 947.18, Florida Statutes, has vested the Commission with the ultimate discretion in determining whether an inmate qualifies for parole. Based upon a review of your entire record, the Commission was drawn to the conclusion that a reasonable doubt existed as to whether you would live a law-abiding life should you be released on parole. The Commission, in reaching its decision, is not required by law to submit some demonstration of new information as its basis for declining to authorize your effective parole release date. The Commission has clearly articulated its reasons for declining to authorize your release based upon a review of the available record in your case. The Commission, on 7/25/90, could find no cause to alter its previous action of 6/6/90.
*933 (Emphasis added). The order rescheduled Williams for an extraordinary reinterview during February 1992 as required by law.

II.

TRIAL COURT PROCEEDINGS
On August 17, 1990, Williams, acting pro se, filed the subject petition for writ of mandamus seeking to compel the Commission to re-establish his PPRD at July 16, 1990.[12] The petition alleges, in effect, that the Commission abused its discretion in suspending his PPRD for the reasons stated in its order, because it had previously relied on the same information and reasoning in establishing his 1990 PPRD, and that there is no good cause or exceptional circumstance shown by the record that would justify the Commission's action to defer establishing his PPRD as the release date, as required by section 947.173.[13]
In its written response to the circuit court's show cause order, the Commission outlined the history of this case as shown by attached documents from the Department of Corrections' file and argued that under the applicable law, petitioner has shown no abuse of discretion by the Commission. The response specifically referred to Judge Beverly's objections to the release as providing the requisite legal cause to deny Williams release on parole and to suspend his PPRD.
Williams filed a reply to the Department's response raising the additional, but new, argument that permitting Judge Beverly's opposition to his parole to serve as the basis for deferring his release date pursuant to section 947.1745(4) violates the constitutional prohibitions against double jeopardy and ex post facto laws, because the judge had not retained jurisdiction over him under the law existing at the time he committed the offense and was sentenced. Williams also attached several documents, one of them a copy of an inmate request to a prison psychologist, dated July 10, 1990, seeking information on his most recent mental health status report. The request asked when the report was done, whether it was a positive or negative report, and whether it indicated that Williams would be a threat toward himself or society. The psychologist's reply, dated July 12, 1990, responded that the report was dated December 1, 1988, that she could not give "a professional opinion of another's evaluation of you, but it did not appear negative," and that it contained "no mention of threat toward yourself or society." (This report is not part of the judicial record.)
The circuit court denied the petition for mandamus without discussion of the constitutional issues or any other specific arguments raised by Williams, reciting only that Williams "is not entitled to extraordinary relief by mandamus." Williams now appeals this order.

*934 III.

CONTENTIONS ON APPEAL
On this appeal, Williams essentially presents two points. First, he contends that allowing Judge Beverly to raise objections to his parole pursuant to section 947.1745(4) without having reserved jurisdiction to do so violates the double jeopardy and ex post facto clauses of the federal and Florida constitutions. Williams's second point challenges the record or factual basis of the Commission's decision and is based on two grounds. He contends (1) that the Commission erred in basing its decision on information previously relied on when initially establishing his PPRD, and (2) that the record does not support the Commission's finding that there is a reasonable probability that, if released on parole, he would not conduct himself as a respectable and law abiding person and his release would not be compatible with his own welfare and the welfare of society, as provided in section 947.18.

A.

REVIEW BY MANDAMUS
Before discussing the merits of Williams's arguments on appeal, however, it is appropriate to comment on the scope of review of the Commission's decision by common law writ of mandamus. It is now settled that the Parole Commission's suspension of Williams's PPRD is properly reviewable by mandamus filed in an appropriate circuit court, with the right of appeal to the district court of appeal. Griffith v. Florida Parole and Probation Comm'n, 485 So.2d 818 (Fla. 1986); Johnson v. Florida Parole and Probation Comm'n, 543 So.2d 875 (Fla. 4th DCA 1989); Zatler v. State, 457 So.2d 1083 (Fla. 5th DCA 1984). With the statutory amendments to chapter 120 in 1981 eliminating review of PPRD decisions pursuant to section 120.68, "the situation has reverted to that situation existing at the time of Moore [v. Florida Parole and Probation Comm'n, 289 So.2d 719 (Fla.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974)]." Griffith, 485 So.2d at 820. See Daniels v. Florida Parole and Probation Comm'n, 401 So.2d 1351, 1353 (Fla. 1st DCA 1981), approved, Roberson v. Florida Parole and Probation Comm'n, 444 So.2d 917 (Fla. 1983). Although the proper remedy to obtain review of a Commission's decision after it has set an EPRD is by habeas corpus for release, a Commission order suspending an inmate's PPRD and thereby refusing to set an EPRD is appropriately reviewed by mandamus. Griffith; Pannier v. Wainwright, 423 So.2d 533, 534 (Fla. 5th DCA 1982).
Review by mandamus does not authorize the court to substitute its judgment for the Commission's delegated discretion under section 947.18 and order the inmate released on parole, because the writ of mandamus may only order the Commission to reconsider its decision and the petitioner's eligibility for parole. Moore v. Florida Parole and Probation Comm'n, 289 So.2d 719; see also Paschal v. Wainwright, 738 F.2d 1173 (11th Cir.1984). In Moore, the petitioning inmate complained that the Commission had denied his release on parole based on its improper consideration of certain uncounseled criminal convictions, and the supreme court explained the purpose of review by mandamus:
... Although perhaps inartfully worded, the intent of our alternative writ was to require respondent to show cause why it should not be compelled to reconsider the eligibility of petitioner for parole without consideration of the aforementioned prior convictions, not to compel the granting of parole. While there is no absolute right to parole, there is a right to a proper consideration for parole. And this should be free from the consequences of a conviction not meeting the standards of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). The Parole Commission is required, as any other body, to comply with constitutional requirements; it cannot deny parole upon illegal grounds or upon improper considerations. It is answerable in mandamus if it does.
... .
In short, the alternative writ does not direct itself toward the issue of whether parole should be granted to the petitioner, but to the issue of whether certain matters *935 were and should have been considered by respondent in its denial of parole to the petitioner. The writ itself, if it be granted after respondent has responded to the alternative writ, would not command the respondent's discretion, but rather would compel the respondent to exercise [sic] its discretion as to the granting or denial of parole without consideration of the aforementioned convictions.
289 So.2d at 720 (emphasis added).

B.

DOUBLE JEOPARDY AND EX POST FACTO
On appeal, both parties have focused considerable attention on Williams's constitutional arguments that allowing Judge Beverly to raise objections pursuant to section 947.1745(4), which had the legal effect of deferring his EPRD and preventing his release at PPRD even though she had declined to retain jurisdiction to review a commission release order under section 947.16(3), Florida Statutes (Supp. 1978), violated the double jeopardy and ex post facto clauses of the federal and state constitutions.
It seems to be settled law that double jeopardy proscriptions do not apply to parole proceedings and that this argument has no colorable merit. See Davis v. Florida Parole and Probation Comm'n, 436 So.2d 144 (Fla. 1st DCA 1983); Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir.), cert. denied, 479 U.S. 830, 107 S.Ct. 115, 93 L.Ed.2d 62 (1986); Nunley v. United States Board of Paroles, 439 F. Supp. 887 (W.D.Okla. 1977).
However, it is not equally clear that the ex post facto argument also lacks colorable merit. In Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court held that even though a statute merely alters penal provisions accorded by the grace of the legislature, such statutory alteration violates the ex post facto clause if it is both retrospective and more onerous than the law in effect on the date of the offense. The law is retrospective if it "changes the legal consequences of acts completed before its effective date," i.e., if it "applies to prisoners convicted for acts committed before the provision's effective date." 450 U.S. at 31, 101 S.Ct. at 965. In determining whether the statute is more onerous, the "inquiry looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual," to see if it imposes greater restrictions on the inmate's eligibility for release. Id. at 33-34, 101 S.Ct. at 966-67. See also Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383, reh'g denied, 419 U.S. 1014, 95 S.Ct. 334, 42 L.Ed.2d 288 (1974); Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); Schwartz v. Muncy, 834 F.2d 396 (4th Cir.1987); Burnside v. White, 760 F.2d 217 (8th Cir.), cert. denied, 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985); Lerner v. Gill, 751 F.2d 450 (1st Cir.), cert. denied, 472 U.S. 1010, 105 S.Ct. 2709, 86 L.Ed.2d 724 (1985); Rodriguez v. United States Parole Comm'n, 594 F.2d 170 (7th Cir.1979). Since the Graham decision, the retrospective application of amendments to parole statutes and regulations have been found not to violate the ex post facto clause in some circumstances, see, e.g., Jonas v. Wainwright, 779 F.2d 1576; Paschal v. Wainwright, 738 F.2d 1173; Davis v. Florida Parole and Probation Comm'n, 436 So.2d 144; May v. Florida Parole and Probation Comm'n, 424 So.2d 122 (Fla. 1st DCA 1982), aff'd, 435 So.2d 834 (Fla. 1983). In other circumstances it has been held to violate the ex post facto clause under the principles discussed in Weaver v. Graham. See, e.g., Williams v. State, 414 So.2d 509 (Fla. 1982); Prince v. State, 398 So.2d 976 (Fla. 1st DCA), rev. denied, 411 So.2d 384 (Fla. 1981); see also Rodriguez v. United States Parole Comm'n, 594 F.2d 170. Retrospective application of the statutory authorization for a judge to retain jurisdiction over an offender under section 947.16(3) was held to violate the ex post facto clause because it imposed an additional requirement on eligibility for parole that was more onerous than the previous law, which did not grant judges such authority. E.g., Williams v. State, 414 So.2d 509; Prince v. State, 398 So.2d 976; Rodriguez v. State, 380 So.2d 1123 (Fla. 2d DCA 1980).
Retrospective application of the provisions in section 947.1745(4) would permit the circuit *936 judge to object to parole release even though that judge had previously declined to reserve jurisdiction for this purpose in accordance with prior law. It is a close question whether this new provision is more onerous to Williams's eligibility for parole than under prior law. In one sense, the new statute may be viewed as more advantageous to the inmate because the trial court's objection to release is no longer binding on the Parole Commission. In another sense, it may be more onerous because the old statute contained strict requirements for retaining jurisdiction to prevent release from prison that the trial judge need not currently follow under section 947.1745(4) when the judge desires to influence the Commission's decision by objectioning to release.
We do not reach these constitutional issues on this appeal, however, even though these issues have been fully briefed to us by both parties. These constitutional issues were not raised in the petition for mandamus (being first raised in Williams's reply to the Commission's response) and were not properly before the circuit court for decision. The Commission was not afforded an opportunity to respond to these contentions before the circuit court, and we cannot tell from the appealed order that the circuit court even ruled on the merits of these constitutional issues.
Inasmuch as the case is to be remanded for further proceedings, as discussed below, it is more appropriate that the circuit court allow these constitutional issues to be raised by amendment to the petition and then rule on them after the Commission has had a full opportunity to respond in the circuit court.

C.

DEFICIENCIES IN THE COMMISSION'S CONSIDERATION OF WILLIAMS'S EPRD

1. Use of Prior Information
As the ultimate decision to release an inmate on parole is left to the Commission's discretion by section 947.18, the Commission's decision to suspend an inmate's presumptive parole release date and defer setting an effective parole release date can be set aside by a court only for demonstrated abuse in the exercise of that discretion. Florida Parole and Probation Comm'n v. Paige, 462 So.2d 817 (Fla. 1985). Abuse of discretion may be shown in various ways, as discussed hereinafter, but it is now clearly established that, even when the Commission's decision to suspend a PPRD and deny parole is based on information previously considered in setting the PPRD, use of such prior information does not amount to an abuse of discretion under section 947.18. Id.; Parole & Probation Comm'n v. Bruce, 471 So.2d 7 (Fla. 1985). Accordingly, we summarily reject Williams's argument that the Commission abused its discretion in suspending his PPRD because it relied on old information previously used to establish his PPRD.

2. Failure to Consider Inmate's Entire Record
When conducting an extraordinary interview and review after the commission quorum (not less than two members) has determined that the inmate is not eligible for parole release pursuant to section 947.18 and rule 23-21.015 (as was done in this case), the Commission's rule 23-21.0155(1) requires that, "The Commission shall independently review the complete official record in the inmate's case to determine whether he is eligible for parole release."
Williams argues that the "complete official record in the inmate's [his] case" does not support the reasons recited by the Commission for denying him release on parole pursuant to his previously established PPRD. The Commission, when filing its response to the circuit court's order to show cause, did not present all portions of Williams's "complete official record" on which it had relied in denying his EPRD. The portions of Williams's record that were made available to the court, however, contain information that raises substantial questions as to whether the Commission fully complied with its obligations under the statutes and its rules to consider "the complete official record in the *937 inmate's case" in arriving at the reasons cited in support of its decision. In addressing these issues it is necessary to briefly review the statutes and rules governing the Commission's responsibilities when conducting an inmate's EPRD review and determining to defer the EPRD. It likewise is necessary to review the court's role in affording limited judicial review of the Commission's action.
Section 947.165(1), Florida Statutes (1989), sets forth the following mandate to the Commission:
The commission shall develop and implement objective parole guidelines which shall be the criteria upon which parole decisions are made. The objective parole guidelines shall be developed according to an acceptable research method and shall be based on the seriousness of offense and the likelihood of favorable parole outcome.
The Commission's rule 23-21.015(5) governs effective parole release date interview procedure and prescribes that the decision to authorize an effective parole release date requires a two-part analysis: in the first part, the Commission must focus on whether new information has been gathered that might require modification of the PPRD; in the second part, the Commission "shall determine whether it can find that the inmate is eligible for parole release" pursuant to section 947.18 "based upon a review of the entire official record in the inmate's case." Thus, in the first part of the analysis, the PPRD cannot be changed by the Commission unless it finds and relies on new information not available and considered in the last interview that establishes good cause in exceptional circumstances. See Florida Parole and Probation Comm'n v. Paige, 462 So.2d 817; Taylor v. Florida Parole and Probation Comm'n, 543 So.2d 367 (Fla. 1st DCA 1989); §§ 947.16(5), and 947.173(3), Fla. Stat. (1989). In the second part of this analytical process, the Commission is directed to review and consider the inmate's "entire official record" and reach the ultimate decision to release or not release the inmate on parole pursuant to criteria set forth in section 947.18; but this decision is not confined by the strictures applicable to the first analysis in respect to new information, and it may be based solely on information previously considered in setting the inmate's PPRD. Florida Parole and Probation Comm'n v. Paige, 462 So.2d 817.
Nevertheless, the Commission's exercise of this delegated discretion cannot be arbitrary or capricious, for it must conform to the requirements of applicable statutes and rules setting objective guidelines. One of these requirements is found in section 947.173(3), stating that, "It is the intent of this legislation that, once set, presumptive parole release dates be modified only for good cause in exceptional circumstances." This provision is applicable to the decisional process leading to the suspension of an inmate's PPRD when the Commission denies an EPRD under section 947.18; this is made clear by the reference to section 947.173 found in subsection 947.1745(4). Section 947.1745(4) states that any objection by the sentencing court to an inmate's release on parole upon reaching his PPRD "may constitute good cause in exceptional circumstances as described in s. 947.173, and the commission may schedule a subsequent review within 2 years, extending the presumptive parole release date beyond that time."[14]See McKahn v. Florida Parole and Probation Comm'n, 399 So.2d 476 (Fla. 1st DCA 1981). Thus, when the Commission suspends a PPRD and declines to set an EPRD, it is required by its rule 23-21.0155(3) to "specifically state the reasons for finding the inmate to be ineligible for parole release and [to] ... identify the information relied upon in reaching this conclusion." See also Rule 23-21.015, Fla. Admin. Code.
The elaborate procedural requirements laid out in chapter 947, Florida Statutes, and the implementing rules in chapter 23-21, Florida Administrative Code, are obviously intended to accomplish the purpose of the "Objective Parole Guidelines Act of 1978" that is, as stated in section 947.002, "to establish *938 an objective means for determining and establishing parole dates for inmates" and thereby eliminate the lack of "objective criteria for paroling" and "allegations of arbitrary and capricious release and, therefore, potential abuses." § 947.002(1), Fla. Stat. (1989). The supreme court emphasized this purpose in Paige when, answering the certified question under review, it stated:
In analyzing the effect of these statutory changes, the First District Court of Appeal has said that
Florida's Objective Parole Guidelines Act has restricted the Commission's previously unbounded discretion in granting parole. The Objective Parole Guidelines Act's ultimate intent is to prevent arbitrary and capricious action by the Commission. § 947.002(1), Fla. Stat. (1981). Section 947.165(1), Fla. Stat. (1981), requires the Commission to develop and implement objective guidelines "which shall be the criteria upon which parole decisions are made." However, neither the statutes nor the Commission's rules provide guidelines concerning the invocation of § 947.18 to refuse to authorize an EPRD... . [I]n the future, the Commission should explicate its reasons for its actions in a manner sufficient to permit judicial review for a determination of whether the Commission has overreached the legislative grant of discretion provided in the Objective Parole Guidelines Act.

Gobie v. Florida Parole and Probation Commission, 416 So.2d 838, 840 (Fla. 1st DCA), review denied, 424 So.2d 762 ([Fla.] 1982) (footnote omitted). The First District in Gobie emphasized that by retaining section 947.18 as a part of the Objective Parole Guidelines Act in 1978, the legislature reflected its intent to retain ultimate discretion in paroling an inmate with the Commission. The reasons for its exercise of discretion, the First District said, should be stated in a sufficient manner so that it could be determined whether the Commission abused its discretion.
462 So.2d at 819-20. Accordingly, the supreme court held that:
Although Paige's presumptive parole release date could not be modified absent new information or unfavorable institutional conduct, these strictures did not confine the Commission in properly exercising its discretion to determine that Paige did not meet the requirements of section 947.18. On the record before us, we find no abuse of discretion by the Commission in declining at this time to set an effective parole release date. The Commission has established rules to guide it in the exercise of this discretion. Consistent with the provisions precluding modification of Paige's presumptive parole release date because of the absence of new information or unfavorable institutional conduct, his presumptive date remains unchanged and he will be afforded biennial review to determine whether he can be found eligible for parole release. Fla. Admin. Code Rule 23-21.155.
Id. at 820.
Similarly, in Parole & Probation Comm'n v. Bruce, 471 So.2d 7, the supreme court, following its decision in Paige, held that:
In the instant case, the Commission determined that it could not make a positive finding for parole release as required by section 947.18. This determination was based upon the findings that respondent was in need of treatment as a mentally disordered sex offender; that he suffered from a psychosexual disorder and a compulsion to commit sex acts against women; and that he had been disciplined for fantasizing sexual feelings toward female correction employees. Under our holding in Paige, this is a sufficient basis to deny setting an effective parole release date. We find no abuse of discretion by the Commission.
471 So.2d at 8.
It is clear that section 947.18 gives the Parole Commission broad discretion to release or not release an inmate on parole based on its determination of a reasonable probability that the inmate, if placed on parole, "will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society." Although the Commission may be aided in exercising *939 this discretion by relying on or drawing inferences from evidence of past events and conduct, nevertheless the Commission is required by its rules to consider the inmate's entire official record when suspending an inmate's PPRD and deferring the EPRD; and if this required review of the record is to be a meaningful requirement, it necessarily means that the Commission must review and consider current as well as past information in that file. See Dunn v. United States Parole Comm'n, 818 F.2d 742 (10th Cir.1987). This review requirement obligates the Commission to give consideration to (or weigh) all information shown in the official file, including aggravating and mitigating matters, both historical and current, and decide how and whether such matters rationally relate to the inmate's fitness for release on parole at the time the Commission formulates its decision. If the Commission does not give consideration to all such matters, it fails to give recognition to the Parole Act's stated objective of establishing objective criteria to govern decisions for granting release on parole and eliminate "allegations of arbitrary and capricious release and, therefore, potential abuses." § 947.002(1), Fla. Stat. (1989). Thus, as the supreme court has made clear, an abuse of discretion occurs if the Commission denies parole release "upon illegal grounds or upon improper considerations." Moore, 289 So.2d at 720.
Judicial review by writ of mandamus is accorded to ensure that the Commission's decision does not amount to an abuse of discretion under the applicable statutes and rules, and ordinarily the writ will issue upon a showing that certain matters were not considered but "should have been considered by [the Commission] in its denial of parole to the petitioner." Moore, 289 So.2d at 720. To facilitate such judicial review, the Commission must articulate with specificity the reasons for its decision and identify the information in "the complete official record in the inmate's case" that supports those reasons. The court reviewing the Commission's decision for abuse of discretion must determine from the record whether the Commission has deviated from legal requirements or otherwise acted improperly in reaching its decision.
Obviously, the Commission's recited reasons for suspending Williams's PPRD (see notes 4-10, supra) are facially sufficient to justify deferring Williams's release on parole under section 947.18. Paige, 462 So.2d 817; Bruce, 471 So.2d 7. But that does not answer the critical issue on this appeal, which is whether the Commission failed to comply with its rules or otherwise acted improperly in the process of reviewing the denial of an EPRD in this case. To make this determination in this case, the trial court should have had available for review those portions of the inmate's file that are relevant and material to the reasons cited by the Commission's order denying parole and the issues presented in the petition for mandamus.
Based on the record before us, it appears that the Commission did not identify the portions of the record that support some of its reasons, and that the trial court did not have material portions of the complete official file in Williams's case that were or should have been considered by the Commission in deferring Williams's EPRD and denying parole for the reasons stated. For example, the Commission's cited reasons placed significant reliance on (1) Williams's history "that involves the abuse of alcohol and illegal use of marijuana, PCP and mescaline," (2) his current mental condition, (3) his lack of participation in self-betterment programs relating to his deviant tendencies, and (4) Judge Beverly's expressed official opposition to release. However, the order fails to identify the portions of the file supporting these reasons.
Regarding the history of drug abuse, the Commission's recitation does not identify what information in the inmate's file it relied on in reaching this finding. The only thing in the record referring to extensive drug abuse history is the presentence investigation report showing statements made by Williams himself to Dr. Miller in connection with Williams's unsuccessful efforts to establish a defense of insanity before trial. It is not possible to determine on what information in the file the Commission based its decision that paroling Williams constitutes a present risk to society because he currently is susceptible *940 to abusing drugs if released. This reason needs further explication by the Commission to pass the type of judicial review required by the supreme court's opinions.
The Commission's stated reliance on Williams's current mental condition and his classification as a "mentally disordered sex offender" likewise does not set forth the matters in his official file that are relied on in reaching this finding. There are no medical reports in the record that support the Commission's recited medical reasons. While there is reference to an unidentified 1985 mental health status report apparently containing negative information, the record also contains information about a subsequent 1988 mental health status report that apparently was not negative. Reliance on the unidentified negative 1985 health report without considering an apparently positive mental health condition reflected in the 1988 report would not conform to the law governing the Commission's review process and would amount to an arbitrary and capricious decision, as a federal court has held in respect to the federal parole commission's evaluation of an inmate's current mental condition without obtaining current medical information. Dunn v. United States Parole Comm'n, 818 F.2d 742. Thus, it is obvious that a more complete record of the medical information relied on by the Commission is required, as well as a more complete explication by the Commission that includes identification of the portions of the inmate's file that support its decision.
Regarding Williams's limited participation in self-betterment programs related to sexual deviant conduct, it is not apparent from the Commission's extraordinary interview report what portions of Williams's record support this finding. Williams has alleged completion of many such programs over the years of his imprisonment, and he also alleged that in 1987, the Department of Corrections discontinued programs related to sexual deviant conduct. Since the Commission has not stated what it relies on for this finding, this reason does not comply with the Commission's rules.
Finally, the Commission's letter to Judge Beverly regarding Williams's impending release on parole recites that copies of certain documents from his file were also transmitted for her consideration in deciding whether to make any objections to Williams's release. Under sections 947.173 and 947.1745(4) the judge's objection to release is "good cause in exceptional circumstances" that can warrant the Commission's decision to delay releasing Williams on parole. While the record does not reveal what documents were sent to Judge Beverly, it does suggest that the most recent medical report sent to her was the 1985 mental health status report upon which she relied in voicing her objection. Thus, whether Judge Beverly's recommendation would have been different had she been given additional "positive" information found in a later 1988 mental health status report in the inmate's file, or an even more current mental health report, is open to serious question. Providing a trial judge with incomplete or misleading information when soliciting a recommendation pursuant to section 947.1745(4) concerning an inmate's release on parole is obviously improper and clearly impeaches the reliability of that judge's recommendation as well as its legal efficacy to support the Commission's decision to deny parole release. Certainly, the failure to submit less than accurate and complete information to the judge cannot be said to meet the requirements of the statutes and rules governing the Commission in this instance.
The Commission's motion for rehearing makes certain contentions that must be directly answered. First, the Commission contends that, since it is authorized to deny parole release under section 947.18 solely on the basis of "old" information in the inmate's file, it is not under any obligation to consider new or current information in reaching its decision. We reject this construction of the statutes and rules discussed in this opinion, because it would only promote purely arbitrary decisions that do not fulfill the Commission's obligations under section 947.18 and the Commission's rules. The provisions of the "Objective Parole Guidelines Act of 1978" and the Commission's implementing rules discussed above require that the Commission give full and fair consideration to all matters in an inmate's official file, and the *941 Commission's compliance with this obligation is unquestionably subject to enforcement through judicial review. For this reason, the Commission is required to explicate its reasons for denying release under section 947.18 and make reference to the portions of the inmate's file that support the reasons recited. We emphasize that this opinion is not based on a constitutionally protected liberty interest in parole release, as argued in the Commission's motion for rehearing; this opinion simply recognizes that the Commission must comply with the statutes and rules that govern the process by which it reaches its decision under section 947.18. We recognize that a reviewing court is not authorized to reweigh the information in the inmate's file to determine whether the Commission reached the correct decision. On the contrary, the reviewing court's jurisdiction is limited to determining whether the Commission has departed from the requirements of law in reaching its decision, and to direct reconsideration of that decision in a manner that complies with the law if non-compliance is found. Hence, this opinion should not be read as incorporating the broad scope of judicial review available under section 120.68 in administrative proceedings, as suggested in the motion for rehearing.
Secondly, the motion for rehearing relies on the supreme court's decisions in Dugger v. Grant, 610 So.2d 428 (Fla. 1992), and Dugger v. Hubbard, 610 So.2d 433 (Fla. 1992), for the proposition that the Commission may rely solely on "old" information contained in a presentence investigation report to deny release on parole under section 947.18 and that it need not give any consideration to new or current information. Those decisions are materially distinguishable from this case because they involved permissive release due to prison overcrowding pursuant to section 944.277, Florida Statutes (1989), and did not involve provisions of the Objective Parole Guidelines Act that are involved in this case.
Finally, we note the Commission's expression of alarm that our decision in this case will overload the limited human resources that the Commission currently has available to process parole release cases. While the need for more resources to process the growing number of parole release cases before the Commission is an important consideration, it is one that must be addressed by the legislature, not by this court. We are sympathetic with the Commission's plight, but we cannot allow such irrelevant considerations to affect our decision to enforce the law.
For the foregoing reasons, we reverse the appealed order and remand for further proceedings consistent with this opinion. The Commission may supplement its response to the circuit court's order to show cause and, if deemed necessary, the court may hold an evidentiary hearing. Cf. Taylor v. Florida Parole and Probation Comm'n, 543 So.2d 367.
REVERSED AND REMANDED.
KAHN, J., and SHIVERS, DOUGLASS B., Senior Judge, concur.
NOTES
[1] In 1978, section 947.16(3) authorized the sentencing judge to retain, for the first third of the sentence, jurisdiction over an offender convicted of sexual battery and kidnapping to review a Commission parole release order. This statute required a trial judge doing so to "state the justification with individual particularity, and said justification shall be made a part of the court record." Thereafter, upon receipt of a release order, "the original sentencing court shall review the order, findings, and evidence, and, if the court finds the commission's order is not based on competent substantial evidence or that the parole is not in the best interest of the community or the inmate, the court may vacate the release order." The statute further provided that any court order vacating the release was not appealable.

This statutory provision was superseded by the adoption of section 947.1745(4) in 1987. See Ch. 86-183, §§ 33, 37, at 1323, 1324, Laws of Fla.
[2] That section provides in part:

If the inmate's institutional conduct has been satisfactory, the presumptive parole release date shall become the effective parole release date as follows:
(1) Within 90 days prior to the presumptive parole release date, a hearing examiner shall conduct a final interview with the inmate in order to establish an effective parole release date. If it is determined that the inmate's institutional conduct has been unsatisfactory, a statement to this effect shall be made in writing with particularity and shall be forwarded to a panel of no fewer than two commissioners appointed by the chairman. Within 30 days after receipt of the recommendation, the panel shall determine whether or not to authorize the effective parole release date; and the inmate shall be notified of such decision in writing within 30 days of the decision by the panel.
[3] Section 947.1745(4), Florida Statutes (1989), provides in pertinent part:

Within 90 days before the effective parole release interview date, the commission shall send written notice to the sentencing court of any inmate who has been scheduled for an effective parole release date interview. Within 30 days after receipt of the commission's notice, the sentencing court shall send to the commission notice of objection to parole release, provided the court objects to such release. If there is objection by the court, such objection may constitute good cause in exceptional circumstances as described in s. 947.173, and the commission may schedule a subsequent review within 2 years, extending the presumptive parole release date beyond that time.
[4] Williams accosted a young woman in a commercial parking lot and forced her at knife point to drive him in her car to a remote area, where he first placed her in the trunk and drove around for about 20 minutes, then took her out of the trunk, bound her hands and feet, cut her clothes off, and, at knife point, raped her violently. The young woman sustained several injuries including cuts where Williams held the knife tightly against her throat, contusions and abrasions on her face and limbs, and trauma to her vaginal area. When finished, Williams forced the woman to drive him back to the parking lot, where he got out and drove away in his car.
[5] The presentence investigation report indicated that Williams served six months in Okeechobee Training School for Boys in 1973 for juvenile offenses involving burglary and stolen property. He served three months in that institution in 1975 for the juvenile offense of auto theft. He had no prior criminal convictions as an adult.
[6] The Extraordinary Review report recites:

The Commission finds that this inmate has a history of substance abuse that involves the abuse of alcohol and illegal use of marijuana, PCP and mescaline. The information is supported in the Department of Corrections' file.
This information, given by Williams to Dr. Ernest Miller, a psychiatrist in Jacksonville, during a pretrial evaluation of Williams regarding his attempt to raise an insanity plea, appears in the presentence investigation report.
[7] The report recites:

The Commission finds and determines other factors that are related directly to the inmate's parole prognosis. He has experienced mental health intervention as a juvenile and was determined at the time of the instant offense to fit the statutory criteria as a mentally disordered sex offender.
The Commission finds that the Department of Corrections' records contain information regarding previous mental health impressions. The Commission finds and concludes that the inmate is still in need of psycho-sexual treatment and that without this treatment he is considered a risk to society. The Commission determines that he has a high propensity toward violent and/or assaultive behavior, a propensity towards substance abuse, difficulty with impulsivity, frustration tolerance, forming mature relationships, acceptance of authority, tolerating differences in others, mistrustful and suspicious of others, exhibits hostility and manipulation of others.
(Emphasis added). The record contains no medical reports nor any other indication of the source of this information.
[8] The report recites:

The commission finds that the Department of Corrections' records contain various information regarding program participation in numerous self-help improvement areas. However, the Commission concludes that these records reveal that he has had limited participation in self-betterment programs that specifically relate to the behavior that resulted in his incarceration, although recommended by the Department of Corrections' staff. The Commission concludes that although his coping skills may be adequate for a structured setting, such as provided by a correctional institution, we find a lack of treatment existent and that he has a propensity for deviant tendencies with irrational thought process and sexual deviation with a propensity profile representative of a repeat offender, thus, we forecast a negative prognosis for acceptable resocialization and a strong likelihood that he will repeat criminal activity.
(Emphasis added).
[9] The report recites:

The Commission is in receipt of official opposition of the inmate's release as follows:
Written correspondence of April 16, 1990 from the Circuit Court in and for the Fourth Judicial Circuit, Duval County, Florida, advising objection to parole release for Inmate Williams. The Commission finds that this official opposition is particularly important in evaluating parole risk in this case. The Commission concludes that it cannot lose sight of the seriousness of the offense of conviction and that the official opposition is reasonable, considering the circumstances of this case.
[10] The report recites:

Although the inmate had some examples of real rehabilitative efforts, the Commission finds that they are somewhat limited considering, in total, his case circumstance and that there still exists a doubt as to whether this inmate might be able to perform well under the conditions of parole supervision. The Commission is drawn to the conclusion that this inmate's mental health and personality profile represents a sufficient risk with regard to the possibility of future criminal behavior that may involve crimes against persons and substance abuse with the likelihood this behavior may demonstrate to be hazardous to others. The Commission is drawn to the conclusion that the available record does not support a positive finding that Inmate Williams' release on parole would be compatible with his welfare and the welfare of society.
[11] Section 947.18, Florida Statutes (1989), provides in pertinent part:

No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission finds that there is reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law-abiding person and that this release will be compatible with his own welfare and the welfare of society.
[12] The pro se petition is inartfully drafted, as one might expect. It alleges in part:

COMES NOW, PETITIONER, BILLY WILLIAMS, in propria personna [sic], and moves this Honorable Court to issue mandamus upon the respondents directing said respondents to RE-ESTABLISH petitioners [sic] presumptive parole release date of July 16, 1990. Petitioner states that the respondents suspended this established release date in a manner which is in violation of State Statute.
Characterizing the Commission's action as "ARBITRARY and CAPRICIOUS," the petition demands that "this court will issue mandamus upon the respondents directing respondents to RE-ESTABLISH the parole release date of July 16, 1990, which would cause petitioner to be released according to the approved release plan... ."
Since the Commission did not change Williams's PPRD, but rather suspended it and deferred setting his EPRD, the petition is technically deficient in requesting that the PPRD be "re-established." Because the issues raised are substantial and should be judicially determined by an appropriate court, we have construed Williams's petition as alleging the Commission's suspension of his PPRD, and denial of an EPRD, in a manner that has illegally deprived him of the Commission's fair exercise of discretion to release him on parole.
[13] Section 947.173(3), Florida Statutes (1989), provides:

The commission may affirm or modify the authorized presumptive parole release date. However, in the event of a decision to modify the presumptive parole release date, in no case shall this modified date be after the date established under the procedures of s. 947.172. It is the intent of this legislation that, once set, presumptive parole release dates be modified only for good cause in exceptional circumstances.
[14] Subsection 947.1745(4) further provides that, "The provisions of this subsection shall be applicable in the event the commission desires to consider the establishment of an effective release date without delivery of the effective parole release date interview."